Noel A. BRINKER, Appellant,

v.

Lewis O. GUIFFRIDA, Director of the Federal Emergency Management Agency United States of America.

No. 85-1757.

United States Court of Appeals, Third Circuit.

Argued June 16, 1986.

Decided Aug. 19, 1986.

Thomas A. Masterson, Jr. (Argued), Taylor & Taylor, Philadelphia, Pa., for appellant.

Susan K. Bank (Argued), Associate Gen. Counsel, Federal Emergency Management Agency, Washington, D.C., for appellee.

Before SEITZ, HUNTER and MANS-MANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Noel A. Brinker appeals from an order of the United States District Court for the Eastern District of Pennsylvania denying Mr. Brinker's petition for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (Supp. IV 1980). Mr. Brinker was the prevailing party in an action against the Federal Emergency Management Agency ("FEMA") for the proceeds of a crime insurance policy. Therefore he may be awarded attorney's fees unless the government meets its burden to show substantial justification for its position preceding as well as during the litigation, or demonstrates special circumstances making an award of fees unjust.

The parties agree that until the final pleading in litigation of this lengthy dispute, the government's position was based upon factual predicates having no reasonable basis in truth. No cause has been shown for the government's prolonged failure to ascertain the facts. Therefore we hold that the government's final litigation stance, though arguably reasonable, was *de minimis* with respect to the duration of the dispute as a whole and cannot provide substantial justification for the government's protracted adherence to a position admittedly having no basis in fact. Nor has the government demonstrated the requisite special circumstances.

We, therefore, will reverse the district court's order so that it may award a reasonable attorney's fee.

### I.

Under the Housing and Urban Development Act of 1970, Pub.L. No. 91–609, 84 Stat. 1770 (1970), the Secretary of Housing and Urban Development was authorized to issue crime insurance policies in accordance with such terms and conditions as the Secretary should determine. All functions thus vested in the Secretary were later transferred by statute to the Director of the Federal Emergency Management Agency. *See* Reorg. Plan No. 3 of 1978, § 202, 43 F.R. 41943, 92 Stat. 3789.

Plaintiff Brinker's Philadelphia residence was insured under a Residential Crime Insurance Policy issued by FEMA. On June 8, 1982, the Brinker residence was damaged extensively by fire determined by the Fire Marshal to have been set by an unknown arsonist. Mr. Brinker timely filed a claim under his residential crime policy. The claim was denied and Mr. Brinker filed suit in the district court on November 14, 1983. By order of August 27, 1985, the district court denied FEMA's motion for summary judgment, granted Mr. Brinker's cross-motion and entered judgment in favor of Plaintiff Brinker for the full amount of the insurance policy, 629 F.Supp. 130. FEMA did not appeal.

On September 24, 1985, Mr. Brinker filed an application for an award of attorney's fees in the amount of $7552.50 in the action before the district court. The petition was denied by the district court on December 2, 1985. Mr. Brinker appeals from the denial of the fee petition and further requests permission to submit a supplemental petition for costs and fees incurred in prosecuting this appeal.

### II.

The Equal Access to Justice Act provides in relevant part that "a court may award reasonable fees and expenses of attorneys, ... to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." 28 U.S.C. § 2412(B) (1982). However, fees may not be awarded against the United States if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The appellant challenges the district court's finding that the position

of the United States was substantially justified.

" '[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; ..." 28 U.S.C. § 2412(d)(2)(D); *see also, Natural Resources Defense Council, Inc. vs. EPA,* 703 F.2d 700, 708 (3d Cir.1983). Substantial justification is essentially a standard of reasonableness turning on whether the government's position had a "reasonable basis both in law and fact." *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983).

█ In an action for fees the government has the burden of proving that its action giving rise to the litigation was substantially justified. *Id.* at 561. While the arguments of the parties, and any evidence introduced in the fees actions, such as affidavits, must be carefully considered, it is essentially the relevant portions of the record in the underlying action which must be examined in order to determine if the government has proved substantial justification for its positions. *Id.* at 562.

█ In order to satisfy its burden to show substantial justification the government must demonstrate (1) a reasonable basis in truth for the facts alleged, (2) a reasonable basis in law for the theory propounded, and (3) reasonable support in the facts alleged for the legal theory advanced. *See Citizens Council of Delaware County v. Brinegar,* 741 F.2d 584, 593 (3d Cir. 1984).

The district court determined that the government's position was substantially justified. We disagree.

### III.

#### A. *Scope of Review*

As a preliminary matter we must address the parties' disagreement as to the proper scope of review of the district court's substantial justification conclusion in a case tried before the district court as opposed to a case wherein the district court reviewed an administrative record. We expressly left open this question in *Washington v. Heckler,* 756 F.2d 959, 963 n. 4 (3d Cir.1985) and in *Donovan v. Dialamerica Marketing, Inc.,* 757 F.2d 1376, 1389 n. 17 (3d Cir.1985) *cert. denied* — U.S. —, 106 S.Ct. 246, 88 L.Ed.2d 255. The plaintiff argues that our review of the decision is plenary, while the defendant asserts that the finding of substantial justification may be reversed only if clearly erroneous.

Under the circumstances of the present appeal our review is plenary. It is true that a finding of substantial justification can sometimes present questions which the United States Court of Appeals for the District of Columbia has characterized as "somewhat anomalous in the appellate scheme." *See Spencer v. N.L.R.B.,* 712 F.2d 539, 563 (D.C.Cir.1983), *cert. denied* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Examples of such questions are district court rulings on whether the government's evidence was probative or whether a particular legal theory is plausible. *Id.* These considerations led that court to develop a composite standard of review for determination of substantial justification. *Id.* at 565.

However, in the present appeal there are no anomalous questions. No findings of fact are contested nor does the appellant contest the finding that the ultimate stance assumed by the agency in the final stages of the litigation was substantially justified.

█ Therefore, the only issue presented by this appeal is whether the government's ultimate litigation position can alone provide substantial justification for the government's position throughout the dispute as a whole. This is a question of the proper application of a legal standard and is subject to plenary review. *Gaines v. Amalgamated Ins. Fund,* 753 F.2d 288, 290 (3d Cir.1985).

We now turn to the question of substantial justification for the agency's position viewed as a whole.

## B. *The Agency Action*

The regulations governing residential crime insurance coverage specify a form for a residential policy and expressly require that "no other policy form shall be used." 44 C.F.R. § 83.5. The regulations in effect at the time Mr. Brinker's policy was issued provided in pertinent part that the insuring agreements in a residential crime insurance policy should be as follows:

I. Loss by burglary and larceny or robbery, including observed theft. (a) To pay for loss by burglary and larceny incident thereto, or robbery, including observed theft, of all personal property from the premises or in the presence of an insured.

II. Damage. To pay for damage to the premises and to the insured property by burglary and larceny incident thereto, or robbery, including observed theft, or attempt threat, and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property therein or away from the premises by vandalism or malicious mischief: Provided, That with respect to damage to the building an insured is the owner thereof or is liable for such damage.

*Id.*

Despite the mandate of the regulations the pertinent insuring agreements in the policy which the parties agree was issued to Mr. Brinker read as follows:

I. Loss by Burglary and Larceny or Robbery, including Observed Theft

To pay for loss by burglary and larceny incident thereto, or robbery, including observed theft, of all personal property from the premises or in the presence of an insured.

II. Damage

To pay for damage to the premises and to the insured property by burglary and larceny incident thereto, or robbery, including observed theft, or attempt threat, and for damage to the interior of that portion of any building occupied by the named insured's household at the premises and to the insured property

therein or away from the premises by vandalism or malicious mischief *which occurs during a burglary or robbery,* provided that with respect to damage to the building an insured is the owner thereof or is liable for such damage. (emphasis added)

The policy language, italicized above, which restricted coverage for vandalism and malicious mischief to losses occurring during a burglary or robbery appears nowhere in the policy form mandated by the regulations. Mr. Brinker, in his statement of claim, reported fire damage, determined by the fire marshal to have been caused by an unknown arsonist. He further asserted:

It was never determined by either myself or the fire dept. how the unknown may have gotten into the premises.... This appears to be a case of burglary and then to cover up the burglary the unknowns started the fire. I do not know for certain if this is the case. As a result we discover (sic) various items of jewelry gone including a 3½ ct. diamond ring.... Cash was also missing, but I do not know if the cash, about $300.00, was burned or stolen. Most of our loss was due to the fire. I would estimate the jewelry loss was well over $5,000.00.

The agency denied Mr. Brinker's claim by letter of November 10, 1982 as follows:

We regret to inform you this loss cannot be covered by the above captioned policy.

We call your attention to the Exclusion (d) in the policy which states: "This policy does not apply under insuring agreements V and VI, to loss occurring during a fire in the premises."

You said in your statement given on August 24, 1982, that "it was never determined by either myself or the fire department how the unknown may have gotten into the premises".

Accordingly, your claim is hereby disallowed. You have one year from the date of receipt of this written notice of disallowance within which to commence suit, in accordance with the policy's terms.

The asserted exclusion for fire losses was later conceded to appear only in commercial policies. In residential policies such as Mr. Brinker's, fire loss was neither expressly covered nor expressly excluded. There is nothing in the letter to indicate that the coverage for vandalism and malicious mischief mandated by the regulations was even considered with respect to Mr. Brinker's claim. In addition, the significance of the statement regarding the unknown's entry onto the premises was obscure at best.

A letter from Mr. Brinker requesting reconsideration of the claim produced no response whatsoever from the agency. The above-quoted letter was the only explanation for the denial of his claim received by Mr. Brinker prior to the filing of his complaint in the district court on November 14, 1983.

The district court found this original denial of the plaintiff's claim to be unjustified because it was based on factual errors as to the applicable policy and as to mandated policy language. This finding is not disputed on appeal.

## C. *The Litigation Position*

Having received no reply to the request for reconsideration by the agency, the Brinkers engaged an attorney and filed suit timely in the district court.

Mr. Brinker's original complaint asserting a claim for coverage of a burglary loss was amended to include a claim for loss due to vandalism and/or malicious mischief. In its answer, the government demanded strict proof of a burglary and alleged in defense that there was no evidence of forced entry into the insured premises as required by the crime insurance contract.[1] This position was clearly justified by policy language which was in conformity with the regulations. However, the government further asserted that loss from vandalism or malicious mischief would be covered only if such loss occurred during a burglary or robbery. As discussed above, this argument was based on policy language which was not in conformity with the then-applicable regulations.

Approximately one year after the filing of its answer to the amended complaint, the government filed a motion for summary judgment. In its motion, the government continued to assert that vandalism or malicious mischief was covered only if occurring during a burglary and that therefore the plaintiff's entitlement to insurance proceeds depended on his ability to demonstrate forced entry. In support of the motion for summary judgment the government attached the affidavit of an investigator for the Fire Marshal's Office stating that there was no physical evidence that Brinker's house had been broken into and no physical evidence of an entry point.

On June 15, 1985 Plaintiff Brinker filed an answer and cross-motion for summary judgment asserting that the insurance policy should not be interpreted to require visible marks of forced entry in connection with a claim for loss by vandalism and/or malicious mischief. The plaintiff's brief cited the variation of the policy language from the requirements of the regulations.

On August 27, 1985, almost three years after the start of this dispute, the government in responding to the plaintiff's cross-motion conceded that no proof of burglary or robbery was necessary under the applicable regulation in order to recover for loss caused by vandalism or malicious mischief. In effect, the government conceded that its position until this point had been unjustified, *i.e.,* its prior position was untenable under the agency's own regulations.

In opposing the plaintiff's motion, the government asserted the new theory that the policy did not expressly cover arson and that arson losses were not covered under the provision for vandalism or mali-

1. In the portion of the residential crime policy setting forth conditions of coverage, burglary is defined as follows:

(c) "Burglary" or "burglary and larceny incident thereto" means the felonious abstraction of insured property from within the premises by a person making felonious entry therein by actual force and violence, evidenced by visible marks upon, or physical damage to, the exterior of the premises at the place of such entry.

cious mischief. Not until this final pleading did the agency advance a legal theory arguably supported by the policy language actually mandated by the regulations.

The district court found that the original litigation position of the government asserting the need for proof of a burglary or robbery was not substantially justified, *i.e.*, there was no reasonable basis in truth for the facts alleged with regard to the residential crime coverage as prescribed by the regulations. However, the district court found the government's final litigation position to be substantially justified because he found the question whether arson is comprehended by the terms vandalism or malicious mischief to be an unsettled legal issue.

The district court's findings with respect to the serial factual and legal justifications for the position offered by the government are uncontested. The district court nevertheless concluded that the government's "position" that fire loss was not covered under plaintiff's policy remained consistent throughout the dispute. The district court reasoned that because the government finally advanced a justification based on facts and a legal theory reasonably derived from the correct policy and the policy language mandated by the regulations, its entire position was substantially justified. The plaintiff contends that the district court erred in this ultimate conclusion. We agree.

■ The district court erred in relying solely upon the government's final litigation posture rather than evaluating the justification for the government's position as a whole, which is defined by statute to include pre-litigation action or inaction as well as litigation position. To avoid an award of attorney's fees to a prevailing party, the government must proffer a justification which is substantial with respect to its position viewed as a totality.

■ In this regard, the government's burden is to show that the relationship of the facts and legal theories alleged in support of its position is such that the government is substantially justified in defending against a claim. A threshold requirement for meeting this burden is to show that the alleged facts have a reasonable basis in truth. *See Brinegar*, 741 F.2d at 593. The facts as to which policy was applicable and what policy language was correct have been readily available to the agency from the outset. Nevertheless, until the final pleading of the litigation the government attempted to ground its position on policy language which could not have been probative of the coverage actually provided to the plaintiff.

■ By the time the agency proffered an arguably reasonable factual justification for its position, the plaintiff had filed every pleading and brief necessary to the district court's decision on summary judgment. The fact that an arguably reasonable position was advanced at the eleventh hour of the litigation cannot justify the government's protracted and unexcused failure to ascertain the correct policy language governing Mr. Brinker's claim. Therefore, the government has not met its burden to show substantial legal and factual justification for its position as a whole.

Following its argument on substantial justification, the government refers almost parenthetically to the second provision of Section 2412(d)(1)(A) which permits a court to refuse to award fees where "special circumstances would make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. IV, 1980). The government claims that such circumstances exist in this case.

■ The legislative history suggests that this provision is a "safety valve" to protect the government's good faith advancement of "novel but credible extensions and interpretations of the law," and to protect the court's discretion to rely on "equitable considerations" in denying a fee award. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980), *reprinted in* (1980) U.S.Code Cong. & Ad.News 4984, 4990. Courts which have found special circumstances have done so on the basis of novel legal issues, *see, e.g., Midwest Research Institute v. United States*, 554 F.Supp. 1379 (W.D.Mo.1983), *aff'd*, 744 F.2d 635 (8th Cir.1984), or on the equitable basis of a prevailing party's unclean hands. *See, e.g.,*

*Oguachuba v. INS,* 706 F.2d 93 (2d Cir. 1983); *Laboratory Supply Corp. v. United States,* 5 Cl.Ct. 28 (1984).

The government suggests that because the district court found the question whether the Residential Crime Insurance Policy covered loss from arson to be an unsettled issue of law, and because the government advanced in good faith a reasonable and established interpretation of the policy, there are special circumstances, *i.e.,* the good faith advancement of a novel legal theory, sufficient to justify denial of the fee award.

However, our decision that the government's position was unjustified is grounded in FEMA's inexcusable delay in advancing a supportable factual position. Therefore, a "safety valve" directed at protecting the good faith advancement of novel legal theories has no relevance here.

Because the government has demonstrated neither reasonable justification for its position nor special circumstances making a fee award unjust, the plaintiff is entitled to a reasonable attorney's fee for the district court action.

### D. *The Fee Application*

The district court, having found the government's position to be justified, did not address the question of a reasonable attorney's fee. However the parties were given the opportunity to develop an adequate record in that regard. In support of his motion for an award of attorney's fees, Mr. Brinker filed the affidavit of Thomas A. Masterson, Jr., Esq. The affidavit detailed the hours spent by Mr. Masterson in the district court action as well as the hours spent by William R. Hoffman, Masterson's law clerk, assisting Masterson in preparing the case.

The defendants filed no affidavits in opposition to the motion for counsel fees. In fact, no challenge was made to the accuracy of the Masterson affidavit. The defendants did, however, file a brief arguing that the hours claimed were duplicative and un-

justified. In reply, the plaintiff filed the affidavit of Mr. Hoffman affirming that the time records submitted with the fee application accurately represent the time spent by him on the Brinker case.[2] In addition, the plaintiff submitted the affidavit of Perry S. Bechtle, Esq., in which he avers that he is familiar with Mr. Hoffman's work as well as with the billing rates for law clerks in law firms in the Philadelphia area and considers the hourly rate requested to be a reasonable rate for Mr. Hoffman's services.

■ No opposing affidavits were filed; no request was made to cross-examine any affiant with respect to his affidavit. The defendants merely argue that the hours claimed were excessive and duplicative. We note that in statutory fee cases where an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to the hours spent or the necessity for their expenditure and declines to do so, there is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant. Therefore, the current submissions provide the necessary record basis for the district court's fee determination. We will remand this matter to the district court for a determination by the district court of a reasonable attorney's fee on the record before it.

■ The plaintiff has also requested permission to submit a petition for attorney's fees incurred on this appeal. The plaintiff's attorneys are entitled to compensation for time spent successfully appealing a fee award when the award is statutorily authorized. *Bagby v. Beal,* 606 F.2d 411 (3d Cir.1979); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir.1978). The plaintiff is the prevailing party on this appeal and is therefore entitled to an award of attorney's fees unless the position of the United States in opposing an award of attorney's fees was substantially justified or special circumstances make the award unjust. 28 U.S.C. § 2412(d)(1)(A).

---

**2.** The plaintiff requested a total of $7,552.50 representing 45.5 hours of Masterson's time normally billed at $115 per hour but calculated at the statutory maximum of $75 per hour, and 92 hours of Hoffman's time at his usual billing rate of $45 per hour.

Ordinarily the petitions for appellate work are handled routinely in this court. However, since we are returning this case to the district court, we feel it would be more efficient for the district court to handle the appellate fee petition as well. The district court does have authority to set fees for counsel's work in both the district court and the appellate court. *Guido v. Schweiker*, 775 F.2d 107, 110 (3d Cir.1985).

### IV.

The judgment appealed from will be reversed and the case remanded to the district court for determination of a reasonable attorney's fee, based on the present record, for representation before the district court. In addition the plaintiff shall have 30 days to submit to the district court a petition for attorney's fees incurred on this appeal to be reviewed by the district court in accordance with normal procedures.