**In re Jean I. ARMSTEAD, Debtor.**

**Jean I. ARMSTEAD, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Samuel R. Pierce, Jr., Secretary of the U.S. Department of HUD; Joseph Russell, Chief Loan Management Branch, Philadelphia Area Office; and Comm. of PA School Employees Retirement Fund, Defendants.**

**Bankruptcy No. 88–11390S.**
**Adv. No. 88–2113S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 20, 1989.

Virginia R. Powel, Asst. U.S. Atty., Peter M. Campanella, Regional Counsel, Region III, U.S. Dept. of Housing and Urban Development, Philadelphia, Pa., for Federal defendants.

Roger V. Ashodian, Delaware County Legal Assistance, Chester, Pa., for plaintiff/debtor.

Patricia Jenkins, Media, Pa., for defendant-mortgagee.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The present contested matter is, hopefully, the final chapter in a sequence of two actions instituted by JEAN I. ARMSTEAD, a mortgagor and later the Debtor in the above-captioned bankruptcy case (hereinafter "the Debtor"), to review a series of denials of her application for an assignment of her federally-insured home mortgage to the Defendant, the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (hereinafter this Defendant and several of its employees, also named as Defendants, are referred to collectively as "HUD").[1] Presented here are several unusual issues arising out of the Debtor's Application for attorneys' fees in the amount of $19,-947.44[2] under the Equal Access to Justice Act, 28 U.S.C. § 2412 (hereinafter referred to as "the EAJA"). We conclude that the Debtor's Application is timely; that she is a prevailing party; that her counsel is entitled to compensation for services performed in the HUD administrative process subsequent to our remand Order; that HUD's position in this matter was not "substantially justified" and that her counsel is entitled to the hourly rate of compensation originally sought. However, we also conclude that this court lacks jurisdiction to consider compensation for services performed prior to the filing of the instant proceeding in this court, including services performed in a previous separate federal case challenging the initial denial of her Application, and that the Debtor's attempt to obtain compensation for services performed in her main bankruptcy case is also improper. Therefore, noting no objection to the hours of services for which compensation is sought nor the description of services provided in the Application, we shall award her $10,366.00.

### B. PROCEDURAL AND FACTUAL BACKGROUND

The tortuous procedural history and factual background of the Debtor's efforts to

---

1. Also named as a Defendant in this proceeding is the Debtor's mortgagee. However, this party has had no role in this case, nor was it a target of the instant motion.

2. In her Brief, the Debtor upped her demand to $20,514.92. Since she had not attempted to amend her motion, we conclude that she is bound to the $19,947.44 figure. See pages 417–18 infra.

review the denial of her assignment Application are recited in detail in our previous Opinion of March 21, 1989, and will not be repeated *in toto* here. *See In re Armstead*, 97 B.R. 798, 799–803 (Bankr.E.D.Pa. 1989). There, we remanded HUD's denial of the Debtor's Application for an assignment back to that agency. It bears repeating, however, that the Debtor's Application for an assignment, which was filed almost five years ago in January, 1985, was originally summarily dismissed by HUD because the Debtor allegedly failed to timely take action necessary to effect a further appeal. This decision was reversed in a sharply-worded Opinion of the Third Circuit Court of Appeals (hereinafter "the 3rd Circuit") in *Armstead v. United States Dep't of HUD*, 815 F.2d 278 (3d Cir.1987). Thereafter, on remand, HUD denied the Application on its merits in a letter of February 29, 1989. 97 B.R. at 799. In order to prevent the loss of her home, the Debtor apparently filed the instant bankruptcy case on April 25, 1988, and, on October 4, 1988, filed the adversary proceeding in issue to review HUD's denial of her Application. *Id.* The result was our decision of March 21, 1989. *Id.*

Ultimately, on May 22, 1989, HUD granted the Debtor's Application for an assignment. The instant motion was filed thereafter in this court on June 22, 1989.[3] In that Application, the Debtor sought compensation for all services by her counsel at Delaware County Legal Assistance Association (hereinafter "DCLAA") from the time of her initial consultation with DCLAA on August 10, 1985, through the litigation of the case ultimately decided by the 3rd Circuit, and through the preparation of the instant Application. We note that, on October 3, 1988, the 3rd Circuit denied, without explanation, a motion to reconsider its previous denial of an EAJA Application filed by the Debtor directly with that court. No further review of this Order was sought.

**3.** We also note that, on June 8, 1989, on a praecipe of the Debtor, we converted the Debtor's main case from what had been a Chapter 13 case to a Chapter 7 case.

**4.** We must warn counsel, the filing of whose Brief, in the course of our consideration of the

On August 11, 1989, HUD filed a lengthy Response in the form of a Brief to the Debtor's instant motion. The parties came before us on August 22, 1989, to argue the motion, after which we entered an Order of August 23, 1989, requesting the parties to submit additional Briefs on or before September 18, 1989 (the Debtor), and October 2, 1989 (HUD), addressing the following issues:

(1) whether fees may be awarded for services in the parties' original action; (2) whether fees may be awarded for services in administrative proceedings; (3) how the hourly rate for reimbursement of counsel should be established; and (4) whether the Defendants were "substantially justified" in defending this proceeding.

.　　.　　.　　.　　.

The Debtor's counsel, in a fashion we consider improperly casual,[4] belatedly filed the Debtor's Brief on September 22, 1989. HUD then requested an extension of time to reply, and we allowed it an extension until October 10, 1989. We note that HUD has persisted in asserting issues other than those recited above, *i.e.*, that the Debtor's motion was untimely filed and that she was not a "prevailing party," despite our indications that we perceived no merit in its positions on these issues.

## C. LEGAL CONCLUSIONS/DISCUSSION

### 1. *This Matter Involves Interpretation of the EAJA.*

The instant matter concerns strictly issues of interpretation of the EAJA. That statute provides, in pertinent part, as follows, at 28 U.S.C. §§ 2412(b), (d)(1), (d)(2)(A):

(b) Unless expressly prohibited by statute, a court may award reasonable

merits of this proceeding, was also delayed, that deviations from our briefing orders are not favored and may result in monetary sanctions in the future. *Compare In re Frascatore*, 98 B.R. 710, 714, 725 (Bankr.E.D.Pa.1989).

fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), *to the prevailing party in any civil action* brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

. . . . .

(d)(1)(A) Except as otherwise specifically provided by statute, *a court shall award to a prevailing party other than the United States* fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), *including proceedings for judicial review of agency action,* brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

(B) A party seeking an award of fees and other expenses *shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil*

*action for which fees and other expenses are sought.*

(C) The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

(2) For the purposes of this subsection—

(A) "fee and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) *attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living* or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee) (emphasis added); ...

2. *The Debtor's Motion was Timely Filed Within Thirty (30) Days of the Final Agency Action.*

 This issue involves consideration of 28 U.S.C. § 2412(d)(1)(B). The Debtor filed the instant application for attorneys' fees on June 22, 1989. HUD contends that the application is not timely because this court's Order dated March 21, 1989 (which HUD mistakenly identifies as March 29, 1989), which remanded this matter to HUD, should be considered to be the date of final judgment from which the thirty-day period should run.

However, we believe that it is more significant that the Debtor filed this motion within thirty days from the date that HUD advised the Debtor by letter that it would accept her mortgage assignment. HUD's letter was dated and sent on May 22, 1989. Federal Rule of Civil Procedure 6 provides that

> [i]n computing any period of time prescribed or allowed by ... any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

If HUD's acceptance of the Debtor's mortgage assignment was the "final judgment," the thirty-day period as provided for by the EAJA would begin to run on May 23, 1989. Further, if this assertion is correct, the Debtor did timely file her application by filing on June 22, 1989, the thirtieth day after May 23, 1989.

In considering what date constitutes the "final judgment" of Plaintiff's action, we have recent guidance from the Supreme Court's decision in *Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). In *Hudson,* the plaintiff filed for disability benefits (SSA) and supplemental security income (SSI) under the Social Security Act. *Id.* 109 S.Ct. at 2251. She requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), where the plaintiff was represented by a legal services corporation. *Id.* After the plaintiff's hearing, the ALJ rendered her decision, finding that the plaintiff was not disabled. *Id.* at 2251–52. The ALJ's decision was approved by the Social Security Appeals Council (hereinafter "SSAC"), and thus became the final decision of the Secretary of Health and Human Services (hereinafter "the Secretary"). *Id.* at 2252. Thereafter, the plaintiff sought review of the SSAC's decision in district court. *Id.* On the Plaintiff's appeal from an adverse district court ruling, the Court of Appeals for the Eleventh Circuit (hereinafter "the 11th Circuit") reversed, vacated the Secretary's decision, and instructed the district court to remand the case to the Secretary for reconsideration. *Hudson v. Heckler,* 755 F.2d 781 (11th Cir.1985). *Id.*

On remand, the ALJ found that the plaintiff was, in fact, disabled. Thereafter, the SSAC adopted the ALJ's new recommended decision and instructed the Social Security Administration to pay the plaintiff SSA and SSI benefits. *Id.*

The plaintiff then filed a petition for attorney's fees under the EAJA. *Id.* The district court denied the plaintiff's petition, finding that the position taken by the Secretary was "substantially justified." *Id.* The Court of Appeals reversed, holding that the Secretary's defense of the denial of benefits to the plaintiff was contrary to her own regulations and hence was not "substantially justified." *Id.* 109 S.Ct. at 2252–53.

In its Opinion, per Justice O'Connor, the Court recited the time-strictures set forth in § 2412(d)(1)(B). *Id.* at 2255. The Court then stated that, in those cases where a plaintiff had initially sought a remedy before an administrative agency, "there will often be no final judgment in a claimant's civil action for judicial review until the administrative proceedings are complete." *Id.* The Court further stated, at *id.,* as follows:

> Thus, for purposes of the EAJA, the Social Security claimant's status as a prevailing party and the final judgment in her "civil action ... for review of agency action" are often completely dependent on the successful completion of the remand proceedings before the Secretary. Moreover, the remanding court continues to retain jurisdiction over the action within the meaning of the EAJA, and may exercise that jurisdiction to determine its legal instructions on remand have been followed by the Secretary. Our past decisions interpreting other fee-shifting provisions made clear that where administrative pleadings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded.

This passage suggests to us that, for purposes of EAJA, a claimant may never attain a status as a "prevailing party" or achieve a "final judgment" until the "successful completion of the remand proceedings" before a particular administrative agency. Similarly, we find that, in the present case, the Debtor did not become a "prevailing party" by virtue of a "final judgment" until, as the Court indicated, "the successful completion of the remand proceedings." Hence, a final judgment on the Debtor's claim, for purposes of the EAJA, was not rendered until May 22, 1989, the date of the letter by HUD advising her that it accepted her application for mortgage assignment. As such, her motion for an award of attorneys' fees which was filed on June 22, 1989, was, in fact, timely.

### 3. The Debtor was Clearly a "Prevailing Party" in the Proceeding.

■ The issue of whether the Debtor was a "prevailing party," involves interpretation of that phrase as it appears in 28 U.S.C. §§ 2412(b) and (d)(1)(A). This issue is rather easily resolved by review of the same passages in *Sullivan v. Hudson* which we considered at pages 410–11 *supra*. While the Court, in *Hudson*, concluded that a plaintiff seeking judicial review cannot be said to *have* "prevailed" by merely achieving a remand of an adverse agency determination to the agency for reconsideration, 109 S.Ct. at 2255, the Court also concluded that such a plaintiff is deemed to *have* prevailed "upon the successful completion of the remand proceedings." *Id.*

It is clear to us that the Debtor has achieved not only some, but arguably *all*, of the benefit which she sought in this litigation. Therefore, it is equally clear that she must be considered to be a "prevailing party" herein. *See also Texas State Teachers Ass'n v. Garland Independent School Dist.,* —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

Hence, we have no difficulty in concluding that the Debtor has cleared this threshold for recovery of an award pursuant to the EAJA.

### 4. Although We Have Jurisdiction to Award Attorneys' Fees for Services Performed in the Administrative Process After Our Decision of Remand, We Do Not Have Jurisdiction to Award Fees for Services Performed in Any Forum Prior to the Filing of this Proceeding or not Performed in the Course of This Proceeding, and We Therefore Decline to Award Such Fees for any Services Performed in the Previous Federal Action, or in the Litigation of the Debtor's Main Bankruptcy Case.

■ The Court's decision in *Sullivan v. Hudson* expressly addresses the issue of when an EAJA fee application can include compensation for services performed not only in the judicial forum in an agency-review process, but also those performed in the administrative process which the judicial process seeks to review. It is apparent from the foregoing references to *Hudson* in discussing the timeliness and the "prevailing party" issues what services in the administrative-review process the Court is willing to consider compensable under the EAJA.

Thus, in discussing the Social Security review process, the Court states that the " 'remand power places the courts, ... virtually as co-participants,' " in the agency-review process, 109 S.Ct. at 2254, quoting J. Mashow, *et al.,* Social Security Hearings and Appeals 138 (1978). The Court states, at *id.,* as follows:

Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed.... Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.... In many remand situations, the court will retain jurisdiction

over the action pending the Secretary's decision and its filing with the court. . . .

Therefore, the Court, in *Hudson, id.* at 2255, stated that

[o]ur past decisions interpreting other fee-shifting provisions make clear that where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded.

The *Hudson* Opinion then goes on to clearly indicate that fees for services performed in administrative proceedings after a judicial action has been instituted by a plaintiff seeking positive administrative relief can be awarded under the EAJA. In so holding, the Court cited to its previous decisions in *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); and *New York Gas Light Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). In *Delaware Valley*, the court had held that the word "action" in the fee-shifting provision of the Clean Air Act should not be read so narrowly as to exclude all proceedings which were "non-judicial." In that case, the court stated, 478 U.S. at 558, 106 S.Ct. at 3094, as follows:

[a]lthough it is true that the proceedings [at issue] were not "judicial" in the sense that they did not occur in a courtroom, or involve "traditional" legal work such as examination of witnesses or selection of jurors for trial, the work done by counsel in these two phases was as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom which secured Delaware Valley's initial success in obtaining the consent decree.

Similarly, in *Carey, supra,* 447 U.S. at 70–71, 100 S.Ct. at 2034, the Court held that, under the fee-shifting provision of Title VII, 42 U.S.C. § 2000e–5(k), a federal court could award attorney's fees for services performed in state administrative and judicial enforcement proceedings.

Relying on the principles enunciated in *Delaware Valley* and *Carey*, the Court, in *Hudson*, held that the administrative proceedings on remand were " 'crucial to the vindication of [respondent's] rights.' " 109 S.Ct. at 2256, quoting *Delaware Valley, supra,* 478 U.S. at 561, 106 S.Ct. at 3096. The Court then stated, 109 S.Ct. at 2256–57, as follows:

No fee award at all would have been available to respondent absent successful conclusion of the remand proceedings, and the services of an attorney may be necessary both to ensure compliance with the district court's order in the administrative proceedings themselves, and to prepare for any further proceedings before the district court to verify such compliance. . . . Given the "mandatory" nature of the administrative proceedings here, and their close relation in law and fact to the issues before the district court on judicial review, we find it difficult to ascribe to Congress an intent to throw the claimant a lifeline that it knew was a foot short. . . . Since the judicial review provisions of the Social Security Act contemplate an ongoing civil action of which the remand proceedings are but a part, and § 2412(d)(1)(A) of the EAJA allows "any court having jurisdiction of that action" to award fees, we think the statute, read in light of its purpose "to diminish the deterrent effect of seeking review of, or defending against, governmental action," 94 Stat. 2325, permits a court to award fees for services performed on remand before the Social Security Administration.

■ Although *Hudson* dealt specifically with Social Security proceedings, rather than HUD's administrative proceedings in reviewing a request for a mortgage assignment, we believe that *Hudson* stands for the principle that a claimant seeking attorney's fees under the EAJA in an agency-review proceeding can generally recover fees for services performed *subsequent* to the court's remand at the administrative level. Therefore, we have no difficulty in concluding that the Debtor's requests for compensation under the EAJA for services per-

formed in the administrative process subsequent to our remand were proper.

■ However, this same analysis does not hold true as to services performed *before* this proceeding was filed in this court. Nor does it apply to litigation in this court which was not connected to the proceeding to effect agency review of HUD's decision. The "remand power" as to such services, having been performed before that power attached, could not possibly have been invoked as of the time that pre-litigation services were performed. This court's oversight of the administrative process cannot be said to have been in place as to pre-litigation services. It therefore appears to us that granting an award of fees to the Debtor for services performed prior to the filing of the Complaint in this proceeding on October 4, 1988, and services performed in the Debtor's main bankruptcy case which were unrelated to this proceeding would be inappropriate.

There are, moreover, added reasons to pause from rendering an award here which includes services performed in the district court and in the 3rd Circuit in the previous, separate action which preceded the filing of the proceeding here. Firstly, the 3rd Circuit issued a final Order of October 3, 1988, refusing reconsideration of its earlier denial of an application for attorneys' fees which was presented directly to it by the Debtor in that prior action. Secondly, our review of the services in that case would place us, an Article I bankruptcy court which is a unit of the Article III district court, in the posture of ruling on matters which were before not only the district court itself, but also the 3rd Circuit.

The Debtor's position on this point, as articulated in its Brief, features the following arguments: (1) It would be wasteful of judicial resources to have this court, the district court, and the 3rd Circuit all rule on attorneys' fees allowable in the course of the Debtor's efforts to review HUD's denial of her application for an assignment; (2) There was allegedly confusion among the district court, the 3rd Circuit, and, presumably, the Debtor's counsel as to which court should hear the application for fees in the prior action. The Debtor suggests that this dilemma can be resolved by presenting the application to yet a third court, *i.e.*, this bankruptcy court; and (3) Since the previous case was closed in the district court, the Debtor may be left with "nowhere to go" to obtain the fees to which she believes that she is entitled from the first action.

HUD, perhaps unintentionally, assists the Debtor in extricating itself from the *res judicata* effect of the 3rd Circuit's Order of October 3, 1988, by suggesting that this Order emanated solely from the principle that "it is the district court, and not this [3rd Circuit] court, which possesses the authority to exercise fee setting discretion," *Ursic v. Bethlehem Mines*, 719 F.2d 670, 674 (3d Cir.1983), rather than a decision on the merits of the Debtor's fee made directly to that court. However, it is clear to us that the dilemma in which the Debtor finds herself could have been resolved by her simultaneously filing the motion requesting fees in the first case in the district court and the 3rd Circuit, as well as in this court. In light of the *Hudson* decision, and its establishment of the principle that the remanding court continues to exercise control over subsequent actions in a remanded administrative proceeding, it seems to us that, if any court could be the proper depository of this entire Application, it would be the district court. This would have resolved the problem of bringing separate Applications to diverse courts. As to the "confusion" between these courts as to which should address this issue, *but see, Ursic, supra,* it is quite likely that the recent *Hudson* decision would have dispelled it.

In any event, while we read *Hudson* as opening the door to requests for compensation for services performed by the Debtor's counsel litigating this proceeding and the proceeding in the administrative forum subsequent to March 21, 1989, we also read it as closing the door on our consideration of requests for compensation for services performed prior to the preparation and filing of this Complaint and the services unrelated to this proceeding which counsel

performed in the Debtor's main bankruptcy case.

5. *The Position of HUD in this Proceeding was not "Substantially Justified."*

■ The final hotly-contested issue between the parties is whether HUD's actions in this matter were "substantially justified," as provided in 28 U.S.C. §§ 2412(d)(1)(A), (d)(1)(B), a finding which would exonerate HUD from EAJA liability. We take particular note of § 2412(d)(1)(B), which allows us to examine the entire record, presumably that made here in this court, as well as those made in the prior federal action and in the previous and subsequent administrative proceedings, in making this determination.

In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court discussed at length the application of the "substantially justified" standard in determining the propriety of an award of attorneys' fees under the EAJA. In defining what constitutes "substantial justification," the Court stated there that

[w]e are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree" but rather "justified in substance or in the main"—that is justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

108 S.Ct. at 2550 (citations omitted).

In a footnote, the court added that

[o]ur analysis does not convert the statutory term "substantially justified," into "reasonable justified: ... *But a position can be justified even though it is*

*not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."*

*Id.* n. 2 (emphasis added).

This court recently reviewed the "substantial justification" issue in an unreported decision issued under the identical standards set forth in 26 U.S.C. § 7430 of the Internal Revenue Code in *In re Owens*, Bankr. No. 85–00882S, 1989 WL 33583 (Bankr.E.D.Pa. April 7, 1989). In *Owens*, we acknowledged that the controlling authority in determining the issue of "substantial justification" was *Underwood, supra.* We noted that *Underwood* held that the proper meaning of "substantially justified" is that the government's action must have had a reasonable basis in both fact and law. We further observed that, in *In re Woods*, 69 B.R. 999 (Bankr.E.D.Pa.1987), this court also had enunciated the applicable standards established in the 3rd Circuit for determining whether positions taken by governmental agencies were "substantially justified" under the EAJA in construing similar language in 11 U.S.C. § 523(d) thusly:

Since the Third Circuit Court of Appeals has spoken many times on the subject of the applicable standards under the EAJA, it will obviously be helpful to look at these cases. *See, e.g., Brinker v. Guiffrida,* 798 F.2d 661 (3d Cir.1986); *Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985); *Dennis v. Heckler,* 756 F.2d 971 (3d Cir.1985); *Tressler v. Heckler,* 748 F.2d 146 (3d Cir.1984); *Dougherty v. Lehman,* 711 F.2d 555 (3d Cir.1983); and *National Resources Defense Council, Inc. v. EPA,* 703 F.2d 700 (3d Cir.1983). It is well-established in this Circuit that "substantial justification 'constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous.' *Dougherty,* 711 F.2d at 563. *See also Natural Resources Defense Council,* 703 F.2d at 711 (opinion announcing the judgment of the court); *id.* at 714–15 (concurring

opinion); *id.* at 719 (concurring and dissenting opinion)." *Washington,* 756 F.2d at 961. *Moreover, the burden of proving substantial justification is on the government. Brinker,* 798 F.2d at 664, *Washington,* 756 F.2d at 961; and *Dougherty,* 711 F.2d at 561. *In order for the government to meet its burden, it must prove all of the following elements: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced. Brinker,* 798 F.2d at 664; *Washington,* 756 F.2d at 961; *Tressler,* 748 F.2d at 149–150; and *Dougherty,* 711 F.2d at 564. The government must make a strong showing on each of the foregoing elements to meet its burden; and the burden is not met merely because the government adduced " 'some evidence' in support of its position." *Washington,* 756 F.2d at 961; *Tressler,* 748 F.2d at 150....

69 B.R. at 1001 (emphasis added) (footnote omitted). We noted, in *Owens,* that this synthesis of applicable Third Circuit caselaw was consistent with the standards set forth in *Underwood.*

We therefore conclude that the burden was on the government here to prove its actions were substantially justified. It must do so by proving that there is both a reasonable basis in truth for the facts alleged by it and a reasonable basis in law for the theories it propounded. Furthermore, as this court noted in *Woods,* "the government must make a strong showing on each of the foregoing elements to meet its burden," 69 B.R. at 1001, and the government will not meet it burden if it merely adduced "some evidence in support of its position." *Id.*

We recognize that the fact that, merely because the 3rd Circuit, this court, and ultimately, HUD itself did not support HUD's earlier refusal to grant the Debtor an assignment of her mortgage to HUD does not in and of itself indicate that the government's position was not "substan-

tially justified." As the Court stated in *Underwood:*

> Obviously, the fact that one other court agreed or disagreed with the government does not establish whether its position was substantially justified. Conceivably, the government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose. Nevertheless, a string of losses can be indicative; and even more so a string of successes.

108 S.Ct. at 2552.

In applying these controlling principles to the present case, we believe that we must examine the merits of HUD's litigating position, which it presents at length in its initial Response to the instant motion, at all stages in the Debtor's Application process, from January, 1985, to May 22, 1989. Certainly, HUD has experienced a string of losses in the court review of its dealings with the Debtor. At the outset, HUD declined the Debtor's initial request to accept an assignment of her mortgage, but told her in a letter that, if she telephoned for an appointment, she could have a face-to-face conference with an agency official at which time she could attempt to provide further information to HUD in order to establish eligibility to the mortgage assignment program pursuant to 24 C.F.R. § 203.652(b).

The parties differ in what next transpired. *See* 815 F.2d at 280; and 97 B.R. at 799. However, suffice it to say that the Third Circuit strongly chastised HUD for the "inexcusable waste of resources by the governmental agency" in denying the debtor the face-to-face conference which it believed that she had sought and been discouraged from pursuing, 815 F.2d at 283, making it clear that Court implicitly believed the Debtor's contention that she had made a call requesting such a conference in contrast to HUD's contention that no such contact was made because its records failed to reflect same. The Court specifically took HUD to task for its administration of the HUD assignment program here, reciting that this program was instituted by Congress as a remedial statute to *help,* not

hinder, citizens who find themselves in the position of the Debtor. *Id.* Specific reference was made to HUD's failure to apply the spirit of the Constitution in its administration of this matter and of its dereliction of its duty to serve its less-wealthy citizens. *Id.*

Nevertheless, after the remand, HUD again denied the Debtor's assignment application on February 29, 1988.

In our Opinion, we found that, contrary to HUD's contention, the Debtor's counsel had attempted to fully cooperate with HUD in gathering information in the initial post-remand administrative process. 97 B.R. at 802. Nevertheless, changing completely the course of its earlier position that the Debtor's Application should be denied because she had not established that her mortgage-payment default was caused by circumstances beyond her control, HUD denied the Application solely because the Debtor had allegedly not established a reasonable prospect of an ability to resume full payments subsequent to the post-assignment payment moratorium. *Id.* In making this decision, HUD miscalculated the Debtor's income, made unjustified assumptions about her expenses, and failed to consider her prospects for additional income and her previous spending patterns. *Id.* at 804–06. It also failed to consider recasting the Debtor's mortgage. *Id.* at 806–07. Only because we were confident that HUD would grant an assignment on remand did we refrain from simply directing HUD to mend this configuration of errors by processing the assignment. *Id.* at 807. *Compare In re Huderson*, 96 B.R. 541, 553–54 (Bankr.E.D.Pa.1989), *aff'd*, C.A. No. 89–2152 (E.D.Pa. August 9, 1989).

In it Response, HUD contends that the justification of its position was vindicated after the remand, seemingly a strange contention when it agreed, at that point, to grant the assignment to the Debtor which it had resisted over the past four and a half years. It also relies heavily upon the denial of attorneys' fees in another case of a HUD assignment which was granted after a judicial remand in a proceeding emanat-ing from the bankruptcy court in *In re Hall*, 59 B.R. 1017 (E.D.Pa.1986).

Apparently, it was developed, in the administrative proceedings subsequent to our Order of March 21, 1989, directing a remand, that the Debtor's health had improved and her ability to work and her daughter's commitment to assisting her were both strengthened. It was also developed that the Debtor had moved out of the premises for some period of time and that she had paid some utility bills by placing them in a third party's name. These facts supposedly vindicated HUD's conclusions, as of February 29, 1988, that the Debtor's actual expenses, as compared to her income, would have rendered her incapable of resuming her full mortgage payments.

We disagree. Had HUD, as would have been logical, focused upon the Debtor's financial capacity to resume payments during the administrative process, the facts of her additional income prospects may well have been developed earlier. HUD's February 29, 1988, decision of denial smacked of last-minute introduction of an issue thought not to be in contest and an attempt to simply somehow justify its earlier stubborn refusal to grant the Debtor a face-to-face conference.

The *Hall* decision is clearly distinguishable. There, HUD denied the debtor's application for an assignment because his financial picture, which included huge medical bills not covered by insurance, seemed certain to render him unable to resume future mortgage payments. 59 B.R. at 1019. The Debtor then filed bankruptcy, discharging these bills. *Id.* The court held, in affect, that HUD could not have reasonably been expected to have foreseen that the bankruptcy would intervene to brighten the Debtor's cloudy financial picture. *Id.*

In this case, the Debtor's bankruptcy filing was not a supervening event which, as in *Hall*, remedied the Debtor's otherwise hopeless financial situation. Rather, here, HUD simply made numerous erroneous calculations and assumptions and gave the Debtor no opportunity to rebut them.

We therefore conclude that HUD's position in this litigation was extremely weak. It consistently refused to recognize the Debtor's stance as a middle-aged widow, in poor health, who was faced with potential loss of a home in which she had substantial equity. Its decision-making process included numerous errors. It improperly applied its own Regulations. Hence, HUD had neither a reasonable basis in fact, nor in law, nor in law applied to fact for the rendering of its February 29, 1988, decision. The Debtor's counsel is to be commended and rewarded, at least in part, for efforts on her behalf in the face of stiff governmental intransigence.

We therefore conclude, without hesitation, that HUD's defense of this proceeding was not "substantially justified."

6. *The Debtor's Counsel is Entitled to the Inflation–Adjusted Hourly Rate Sought and the Entire Sum of $10,-366 Sought in the Motion for Only Those Services Performed in Connection with This Proceeding and in Subsequent Administrative Actions.*

In the instant motion, the Debtor requested that the rate of compensation for the services of her counsel be measured at $98.07 per hour. The EAJA provides that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished" but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

In *Underwood*, the court restrictively defined those "special factors" justifying a rate higher than $75 per hour plus increases for the standard of living. 108 S.Ct. at 2554. However, the Debtor here is not seeking the rate of $98.07 per hour due to any "special factors," but solely because of an alleged increase in the $75 figure due to the rising cost of living.

In *Natural Resources Defense Council v. United States Environmental Protec-*

*tion Agency,* 703 F.2d 700 (3d Cir.1983), the successful plaintiff in a Clear Air Act case petitioned the court for an award of counsel fees under the EAJA at a rate of $77.86 an hour because of the increased cost of living which had transpired since the effective date of the Act on October 1, 1981. The 3rd Circuit expressly ruled that the Consumer Price Index (hereafter "CPI") could be used in determining and allowing cost of living adjustments under the EAJA. In so holding, the court stated as follows:

The Act plainly delegates to the court authority to make such an adjustment, [based on the cost of living increase] although with little guidance as to when it is appropriate. The purpose of the statute was to encourage challenges to agency action, and the cost of living adjustment provision seems designed to provide a disincentive to agencies to prolong the litigation process. The required adjustment should therefore be made.

703 F.2d at 713.

A cost of living increase was likewise allowed to the hourly rate in *Garcia v. Schweiker*, 829 F.2d 396 (3d Cir.1987). In *Garcia*, a prevailing Social Security disability claimant moved for attorney's fees under the EAJA. The claimant was represented by a legal services attorney, who requested the statutory fee rate of $75 per hour, adjusted for the cost of living, thus resulting in a requested rate of $88.56 per hour. In *Garcia*, the 3rd Circuit stated that the issue was "simply whether the cost of living has increased sufficiently to warrant making the adjustment." 829 F.2d at 401. In *Garcia*, counsel had calculated that the cost of living had increased eighteen (18%) percent from the time the statutory rate was fixed in 1981 until the time the claimant became a "prevailing party" under the EAJA in October, 1986. On the other hand, the Secretary contended that the cost of living increase should not be measured from the date the statute was *enacted* in 1981, but rather from the date the EAJA was *re-enacted* in August, 1985.

The 3rd Circuit held for the *Garcia* claimant, finding that the cost of living

adjustment was to be measured from 1981. In so holding, the court relied upon *Allen v. Bowen*, 821 F.2d 963 (3d Cir.1987), in which the 3rd Circuit had earlier held that the statute which re-enacted the EAJA was "intend[ed] to have the cost of living adjustment to the $75 an hour rate measured from 1981." *Garcia, supra*, 829 F.2d at 401, quoting *Allen, supra*, 821 F.2d at 967. In light of these findings and the failure of the Secretary to object to the claimant's proffered cost of living increase rate, the court, in *Garcia*, granted the claimant attorney's fees in the amount of $88.56 per hour.

In the present case, the Debtor produced calculations tending to show that the CPI increased by 32.55 percent nationally and 34.49 percent in Philadelphia between October, 1981, and May, 1989. This increase would justify a current EAJA hourly rate, factored for an increase in the cost of living, at $99.41 and $100.86 per hour, respectively. Hence, the $98.07 rate requested was said to be, if anything, overly conservative. In fact, the Debtor attempted to argue that we should utilize the adjusted hourly rate of $100.86 and increase his fee request to $20,514.92. In light of the Debtor's failure to amend her motion herself to request this amount, we shall continue to measure the hourly rate of the Debtor's counsel at $98.07.

Despite the numerous aspects of its opposition to the Debtor's EAJA motion, HUD did not contest the hourly rate requested. Nor has HUD opposed any of the requests for time expended on the adversary proceeding or the administrative services provided thereafter by the Debtor's counsel. We calculate this time as totalling 105.7 hours. At the rate of $98.07 per hour, the Debtor would therefore be entitled to an award of $10,366.00.

▉ Unless a fee award will be paid from the proceeds of a debtor's estate or a similar fund-in-court, *compare In re Na-*

*tional Paragon Corp.*, 87 B.R. 11, 13 (E.D. Pa.1988); and *In re J.A. & L.C. Brown Co.*, 75 B.R. 539, 539–40 (E.D.Pa.1987), "a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate," *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir.1989), unless the reductions are necessary due to factors which are within the court's own knowledge. *Id.* at 719. The Application includes several instances of gross lumping, *e.g.*, 32 hours for researching and drafting the summary judgment motion on the merits in this proceeding, which would not comport with the standards of *In re Meade Land & Development Co., Inc.*, 527 F.2d 280, 283–84 (3d Cir.1975). However, the Debtor's motion was not preceded by any directive that the Application comply with the standards of *Meade Land*.[5] We shall therefore not reduce the hourly rate nor the hours of services requested for the services deemed compensable, which seem quite reasonable.

## D. CONCLUSION

The Debtor's motion will be granted in part in the amount of $10,366.00.

---

5. *Compare In re Fleet, Fleet v. U.S. Consumer Council, Inc.*, Bankr. No. 81–04969S, Adv. No. 83–0880S (Bankr.E.D.Pa., Sept. 19, 1989) (fee application reduced slightly, despite no opposition from opposing party, because of a gross failure of the movant to comply with the stan-

dards of *Meade Land* in the face of a court order requiring same and where counsel requested rates of compensation considerably above those requested for the same attorneys in other cases in the same relevant time-frame).