SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, Pacific District, Plaintiff,

v.

UNITED STATES, et al., Defendants.

Arthur David CLIFFORD, et al., Plaintiffs,

v.

Federico PEÑA, Secretary, United States Department of Transportation, et al., Defendants.

DISTRICT NO. 1—PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION (AFL–CIO), et al., Plaintiffs,

v.

Federico PEÑA, Secretary, United States Department of Transportation, et al., Defendants.

Civ. A. Nos. 95–62 SSH, 95–848 SSH, and 95–849 SSH.

United States District Court, District of Columbia.

June 29, 1995.

Leslie J. Wiesenfelder, Dow, Lohnes & Albertson, Washington, DC, for Seafarers Intern.

Andrew D. Roth, Bredhoff & Kaiser, Washington, DC, for Arthur David Clifford, et al.

W. Patrick Morris, Richard J. Hirn, Washington, DC, W. David Holsberry, Davis, Coswell & Bowe, San Francisco, CA, for Pacific Coast Dist. Marine Engineers Beneficial Ass'n.

Sandra M. Schraibman, Carol Federighi, Civ. Div. Dept. of Justice, Washington, DC, for Dept. of Transportation.

Robert T. Basseches, I. Michael Greenberger, John Townsend Rich, Shea & Gardner, Washington, DC, for American President Lines.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiffs' motions for summary judgment; the federal defendants' motion to dismiss or, in the alternative, for summary judgment;[1] and the motion of defendant American President Lines, Inc. ("APL") for summary judgment. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," *see* Fed. R.Civ.P. 52(a), the Court nonetheless sets forth its analysis.

### Background

Plaintiffs are three labor unions that represent certain classes of U.S. merchant marine employees, and several members thereof. Plaintiffs challenge the decision of the Maritime Administrator ("Administrator") to permit APL, a United States corporation engaged in the business of international shipping, to operate six new foreign-built C11 vessels under foreign flag, and thus staffed by foreign crews, as being in violation of the Merchant Marine Act, 1936, 46 U.S.C.App.

---

1. The federal defendants are the United States, Federico Peña in his official capacity as Secretary of the Department of Transportation, and Albert J. Herberger in his official capacity as the Administrator of the United States Maritime Administration.

§§ 1101 *et seq.* ("Act"), the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and the Due Process Clause of the Fifth Amendment.

APL receives a government subsidy known as an operating differential subsidy ("ODS"), which is intended to help U.S. operators meet foreign competition by covering the higher costs of operating vessels under U.S. flag, which, because of higher U.S. labor costs, typically exceed those of operating a vessel under foreign flag. *See* 46 U.S.C.App. § 1171. To facilitate the ODS program, § 804(a) of the Act prohibits a recipient of an ODS from operating any foreign-flag vessel which competes with any U.S.-flag service in an "essential service." 46 U.S.C.App. § 1222(a). Section 804(b), however, creates an exception to this general prohibition:

> Under special circumstances and for good cause shown, the Secretary of Transportation may, in his discretion, waive the provisions of subsection (a) of this section as to any contractor, for a specific period of time.[2]

*Id.* § 1222(b). Thus, absent a § 804(b) waiver, APL may not operate the six C11 vessels under foreign flag on the "essential" trade routes for which they are intended.

On July 16, 1993, APL applied to the Administrator for a § 804(b) waiver, requesting permission to operate the C11 vessels under foreign flag in an essential service, until December 31, 1997—the expiration date of APL's ODS contract. On August 27, 1993, the Administrator, as a matter of discretion, published notice of APL's application in the Federal Register. 58 Fed.Reg. 45371–72 (1993). Plaintiff Seafarers International Union of North America—Pacific District ("SIU–PD") was the only plaintiff to file timely comments thereon.[3] SIU–PD objected to the granting of the waiver on the grounds that: (1) a waiver would be contrary to the intent and the purpose of the Act, and,

in particular, to the purpose of § 804; and (2) the requirements of "special circumstances" and "good cause" under § 804(b) should be restrictively interpreted, and thus result in a denial of APL's application.

The Administrator postponed action on APL's application while maritime revitalization legislation was pending before Congress—legislation which, if passed, would have effected an overhaul of the current law governing the maritime industry. After it became apparent that such legislation would not be enacted during the 103d Congress, on October 13, 1994, APL filed a request for a decision on its application.

On November 15, 1994, the Administrator granted APL's § 804(b) application, adopting an October 24, 1994, recommendation prepared by the Director of the Maritime Administration's ("MarAd") Office of Subsidy and Insurance as the final decision. In brief, the Administrator found that special circumstances and good cause existed, and imposed certain conditions on the waiver. Plaintiffs seek to have the decision of the Administrator vacated and remanded.

### *Analysis*

#### I. *Standing*

■ Defendants contend that plaintiffs lack standing to challenge the Administrator's decision. To establish standing, plaintiffs must allege facts sufficient to show: (1) that they have suffered some actual or threatened injury; (2) that the injury is fairly traceable to defendants' conduct; and (3) that a favorable court decision is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ Defendants argue that plaintiffs' alleged injury—loss of employment—is speculative and insufficiently imminent because APL may not scrap or withdraw its existing

---

**2.** The Secretary of Transportation has delegated his authority to administer the Act to the Maritime Administrator. 49 C.F.R. § 1.66(e) (1994).

**3.** A letter submitted by plaintiff International Organization of Masters, Mates, and Pilots ("MMP") addressed a separate and different request by Sea–Land Services and APL to reflag

U.S.-flag vessels under foreign flag. Additionally, that letter was addressed to Secretary Peña instead of the Maritime Administration, and thus was not received by the agency. Therefore, MMP's comments were not considered by the agency as to APL's waiver application.

ships from service without MarAd's permission, which APL has not yet sought to do. However, APL has made clear its intent to seek such permission around October or December of 1995,[4] and the Administrator's decision strongly indicates that at least some of these requests will be granted.

The record further indicates that some of APL's technologically outmoded or soon-to-be overage vessels will be withdrawn from service prior to the expiration of their economic lives in 1996 and 1998, and replaced with the foreign-flag C11 vessels. Thus, although the expiration of APL's ODS contract (and the lack of any new maritime legislation) will inevitably lead to some loss of employment for plaintiffs' members, the Administrator's action will move forward the date on which jobs will be lost. The Court finds that this accelerated unemployment date is sufficient to establish injury.

This accelerated unemployment date is fairly traceable to the Administrator's decision, and would be remedied by a court decision vacating the Administrator's decision. Although defendants are correct that the Court is powerless to address the broader problems facing the merchant marine industry, the relief sought by plaintiffs—vacating the agency decision—would provide redress for the specific injury defined above. Accordingly, defendants' motion to dismiss for lack of standing is denied.

## II. Alleged Violations of the APA

Both plaintiffs and defendants move for summary judgment on plaintiffs' APA claims. Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c). Because the issues raised by the present motions concern only questions of law, this matter is appropriate for resolution on summary judgment.

■■■ Under the APA, the "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–45, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). The agency action in this case is an informal adjudication. The Court will set it aside only if it is " ' arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements."[5] *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (citing 5 U.S.C. § 706(2)(A), (B), (C), (D)). This standard is highly deferential. *See, e.g., Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41–42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

### A. Statutory Interpretation

Plaintiffs assert that the Administrator's interpretation of the "special circumstances" and "good cause" requirements of § 804(b) violates the authorizing statute and consequently the APA's requirement that agency action be "in accordance with law." *See* 5 U.S.C. § 706(2)(A). Specifically, plaintiffs contend that the Administrator's interpretation of § 804(b) is contrary to one of the Act's purposes, that of promoting the ownership and operation of U.S.-flag ships by U.S. citizens.

■■■ When a court reviews an agency's interpretation of a statute, the court first

---

**4.** *See* Declaration of Robert T. Basseches in Support of APL's Ex Parte Application for Stay and Revised Briefing Schedule (filed March 27, 1995).

**5.** Plaintiffs' contention that a formal hearing is required is meritless. "The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred." *Florida Power & Light Co.*, 470 U.S. at 744, 105 S.Ct. at 1607 (citing 5 U.S.C.

§§ 551(13), 704, 706). The Supreme Court has made clear in numerous other cases that procedural requirements may not be imposed beyond those required in the APA or other applicable statute. *See, e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 523–25, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). Accordingly, the Court rejects plaintiffs' claim that due process was violated because a hearing was not held.

must determine whether Congress has spoken directly on the precise question at issue, either on the face of the statute or in the legislative history. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* 467 U.S. at 843, 104 S.Ct. at 2782. Section 804(b) is silent on the meaning of the terms "special circumstances" and "good cause." Additionally, the parties have not been able to point to any legislative history that sheds light on these terms, nor has the Court been able to find any. Therefore, the Court proceeds to the second stage of the *Chevron* inquiry, whether the Administrator's construction of § 804(b) is a reasonable one. The Court finds that it is.

■ MarAd has determined that the "special circumstances" and "good cause" requirements of § 804 call for the agency to exercise its discretion "consistent with the declaration of the policy of the Act [46 U.S.C.App. § 1101]." The declaration of policy section may be summarized as supporting the following goals: (1) provision of shipping services adequate to support domestic and foreign water-borne commerce of the United States; (2) support of a national defense when necessary; (3) ownership and operation under U.S. flag by trained U.S. personnel; and (4) maintenance of a modernized and well-equipped merchant marine competitive with that of foreign nations. *See* 46 U.S.C.App. § 1101. The purpose of § 804 in particular is to prevent ODS recipients from diverting their subsidies to foreign-flag vessels that compete with U.S.-flag vessels. *Certain Bulk Operators,* 25 Shipping Reg. (P & F) 1261, 1264 (MA 1990).

To these ends, the agency has formulated a nonexhaustive list of issues that should be considered to determine whether "special circumstances" and "good cause" exist:

(1) . . . a special circumstance exists where (a) the proposed foreign-flag vessel use will not adversely affect subsidy payments or the subsidized service, and (b) the Appli-

cant would suffer a hardship if the prohibition is enforced, and (2) . . . good cause is shown (a) if the proposed vessel use will have an insignificant effect on American-flag service, (b) if ownership operation of the vessels under the United States registry by citizens is not practicable, and (c) there is an insufficiency of American-flag vessels of the right type to serve the purpose. Other special circumstances and good cause may exist.

*States Marines Lines, Inc.—Sec. 804 Waiver,* 1 Shipping Reg. (P & F) 8, 16 (FMB 1960); *see Certain Bulk Operators,* 25 Shipping Reg. (P & F) 1261, 1264 (MA 1990) (applying same factors). These factors act as a balancing test which the agency uses as a guide to weigh the benefits of waiver to the subsidized operator against the detriment to the U.S.-flag services and "to determine whether the objectives of the Act[ ] are furthered by the waiver." *Waterman Steamship Corp.,* 16 Shipping Reg. (P & F) 1243, 1256 (MA 1976). The Administrator repeatedly has concluded that, in the absence of subsidy abuse, to which § 804(b) is directed, waiver is appropriate as long as the benefits to the operator outweigh the detriment to the U.S.-flag competitors. *See, e.g., United States Lines, Inc.,* 22 Shipping Reg. (P & F) 1525, 1533–37 (MA 1984); *see also Certain Bulk Operators,* 25 Shipping Reg. (P & F) 1261, 1264 (MA 1990); *Farrell Lines, Inc.,* Docket No. S–910 (MA Oct. 17, 1994) (unpublished); *American President Lines, Ltd.,* 24 Shipping Reg. (P & F) 961, 965–66 (MA 1988).

Although the granting of waivers under § 804(b) by definition means that ODS recipients will be operating vessels with foreign crews, such a result is not inconsistent with the Act's goal of ownership and operation of vessels under U.S. flag by U.S. citizens. The Act expressly states that this goal is to be achieved only "insofar as may be practicable." 46 U.S.C.App. § 1101. In light of the multiple and competing goals of the Act, the Act's express recognition that balancing of goals is necessary, and the broad grant of discretion conferred in § 804(b), the Court finds that the Administrator's interpretation of § 804(b) is reasonable.

## B. The Administrative Record

Before considering the merits of the agency's decision, the Court must determine (1) whether the Administrator may adopt a staff decision as its own; and (2) whether MarAd may supplement the administrative record.

■ First, plaintiffs contend that the Administrator may not adopt a staff decision *in haec verba* as his own, under *Independent U.S. Tanker Owners Comm. v. Lewis*, 690 F.2d 908 (D.C.Cir.1982) ("*ITOC*"). The agency's fatal flaw in *ITOC*, however, was not the verbatim adoption of the staff's recommendation, but rather the inadequacy of the agency's explanation and the agency's reliance on data that were not available to the interested parties. *Id.* at 925–26. Thus, although critical of the Administrator's verbatim adoption of the staff's recommendation, the Court of Appeals did not rest its decision on this ground. In fact, as would be expected, other Court of Appeals' decisions have sanctioned the reliance by agency heads on staff recommendations. *See National Small Shipments Traffic Conference v. Interstate Commerce Comm'n*, 725 F.2d 1442, 1450 (D.C.Cir.1984); *Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 461 (D.C.Cir.1967). Thus, the Court finds that the Administrator is not prohibited from adopting the staff recommendation as his own.

■ Second, the federal defendants seek to supplement the administrative record with the declaration of Edmond J. Fitzgerald, the Director of MarAd's Office of Subsidy and Insurance, who prepared the recommendation that was adopted by the Administrator. Plaintiffs object to supplementation of the administrative record on the ground that the declaration offers impermissible *post hoc* explanations for the Administrator's action in violation of the long-established rule that judicial review of agency action must be confined to the administrative record.

■ Although judicial review is normally confined to the administrative record, agency affidavits may be used to supplement the administrative record to further explain the administrative record and describe the background information that was available to the agency. *See Dyer v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 207 (D.C.Cir. 1988) (applying the rule allowing agencies to supplement the administrative record to provide additional explanations of the reasons for the agency decision) (citing *Camp v. Pitts*, 411 U.S. 138, 141–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)); *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir.1993) (same); *Armstead v. United States Dep't of Housing and Urban Dev't*, 815 F.2d 278, 281 (3d Cir.1987) (upholding supplementation of the administrative record where "affidavits were provided to explain the information which was available to the[ ] decisionmakers at the time the decision was being made."). Because the Fitzgerald declaration, like the post-decisional memorandum in *Dyer*, "merely illuminates reasons obscured but implicit in the administrative record," the Court finds that it would be appropriate to consider the declaration in reviewing the merits of this agency action.[6]

## C. The Merits of the Agency's Decision

■ 1. *Not "Arbitrary and Capricious."* Plaintiffs contend that, even under the Administrator's interpretation of § 804(b), *see supra* Part II–A, the approval of the application was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). Plaintiffs note that the Administrator's decision does not cite the *States Marine Lines* multifactor test, and argues that this omission indicates that the Administrator has not applied the test. Because the Administrator's action is an informal one, however, formal findings are not required; all that is required is "that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of the decision." *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654, 110 S.Ct. 2668, 2680, 110

---

**6.** The submission of the declaration by Fitzgerald, the Director of MarAd's Office of Subsidy and Insurance, rather than Herberger, the Administrator, is of no consequence. Fitzgerald directly advised Herberger on APL's waiver application and drafted the recommendation that was adopted *in toto* by Herberger.

L.Ed.2d 579 (1990) (citing *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 523–25, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978) and *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Thus, "[a court] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–87, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (applying "arbitrary and capricious" standard to formal adjudication).

It is readily apparent from a review of the record that the Administrator's decision was based on the interpretation of § 804(b) that consistently has been applied over the years. The decision itself cited the following as constituting "special circumstances" and "good cause": (1) the likelihood that the vessels would be sold to a foreign owner absent a waiver, which would bar U.S. access to the vessels in times of national emergency; (2) the income that would be generated by the vessels which would be available to support APL's overall operations; (3) the expiration of the economic lives of several of APL's currently owned vessels; (4) APL's corresponding need for the vessels in order to remain a major company in international shipping; (5) the possibility of the passage of new maritime revitalization legislation for which the vessels might be eligible; and (6) the lack of adverse competitive effect on U.S.-flag operators from the grant of a waiver. Additionally, the Administrator imposed numerous conditions that were intended: (1) to ensure that the vessels would remain available for future national emergencies; (2) to preserve their availability for future maritime programs; and (3) to address SIU–PD's concerns about the adverse employment effects on the U.S. merchant marine. These conditions, *inter alia:*

- prohibit APL from receiving or using ODS for the benefit of any foreign interest;

- require APL to register the vessels under an Effective United States Control Flag;

- require APL to enroll the vessels in a Voluntary Intermodal Sealift Agreement;

- require APL to enroll the vessels in the Maritime Security Program, if such legislation is enacted, or an equivalent program of support for the operation and maintenance of U.S.-flag vessels; and

- prohibit APL from scrapping or reflagging any U.S.-flag vessel prior to October 1, 1995.

The Fitzgerald declaration further illuminates the background against which this decision was made. The phasing out of the ODS program and the elimination of another subsidy program known as CDS—construction differential subsidy—drastically have changed the economic landscape in which international shipping concerns like APL must compete. The elimination of the CDS has resulted in the elimination of the construction of liner ships for U.S. foreign commerce in U.S. shipyards because of the prohibitive cost absent a subsidy. Yet foreign-built ships—the only new ships now available, as a practical matter—are not eligible for the ODS, which covers the higher U.S. labor costs. Thus, in MarAd's judgment, APL could not have placed the C11s under U.S. flag, and accordingly staff them with U.S. citizens, because it would have been prohibitively costly to do so without the ODS. At the same time, APL had a need to update its fleet because 12 of its 19 vessels will be beyond their economic lives between 1996 and 1998.

The Fitzgerald declaration further explains why SIU–PD's objection regarding subsidy diversion was rejected. There is no risk of subsidy leakage because subsidy payments are fully consumed in the payment of wages to American crews on subsidized ships. Specifically, the subsidies are limited to the differential in seamen's wage costs actually paid by APL. Additionally, APL's financial records are audited each year.

The Administrator's decision, supplemented by the Fitzgerald declaration, reveal that the Administrator applied the "special circumstances"/"good cause" test as it has been developed over the years. As discussed above, the issue of subsidy diversion—the first factor—was considered, and it was de-

termined that there was no risk of such diversion. As a precautionary measure, however, the waiver included a condition prohibiting APL from using any ODS for the benefit of any foreign interest whose relationship with APL is approved by the waiver. The second factor—"hardship"—also was present. The Administrator repeatedly has recognized as a "hardship" for operators the unavailability of the CDS—and hence the unavailability of U.S.-built vessels—and the phasing out of ODS contracts. *See* cases cited *supra* at 647. This circumstance is present in the instant case. Another factor cited by the Administrator that presents a "hardship" circumstance is the upcoming expiration of the economic lives of 12 of APL's 19 ships. Thus, the special circumstances factors were satisfied.

The "good cause" factors also were present, though not expressly labelled. First, the decision makes a finding that there will not be a significant effect on U.S.-flag service. Fitzgerald's memorandum to the Administrator explains that because no U.S. operators filed an objection, under MarAd precedent, it may be assumed that there is not a significant effect on U.S.-flag competition. Second, operation of the vessels under U.S. flag was not practicable because of the status of the CDS and ODS programs. Third, no U.S.-flag vessels are available to serve APL's purposes, again because of the status of the CDS and ODS programs. Another factor cited by the Administrator is the need to maintain the ships under U.S. control for national defense purposes at a time when the future of the maritime program is uncertain. The conditions imposed by the Administrator present a reasonable interim solution.

For the foregoing reasons, the Court finds that the decision to grant the waiver was reasoned and rational, and supported by the record.[7]

■■■ *2. "In Accordance With Law."* Plaintiffs also contend that the waiver must be vacated on the ground that it undermines the Act's express purpose of operation of vessels under U.S. flag by U.S. citizens, and

therefore is "not in accordance with law" in violation of 5 U.S.C. § 706(2)(A). While it is true that the waiver does not further this particular purpose, the Act has other purposes as well which are furthered by the waiver, which plaintiffs ignore. These include support of a national defense and maintenance of a modernized and well-equipped merchant marine competitive with that of foreign nations. *See* Part II–A. The Court of Appeals has recognized in other contexts that MarAd "may not be able to pursue all of the Act's goals simultaneously." *ITOC v. Skinner,* 884 F.2d 587, 594 (D.C.Cir.1989). Additionally, the Administrator's placement of less weight on the goal of operation of vessels under U.S. flag by U.S. citizens is reasonable in light of the elimination of the CDS program and the phasing out of the ODS program—programs which were essential to furthering that goal.

■■■ *3. Waiver of Other Arguments.* Plaintiffs' other arguments are deemed waived because they failed to raise them before the agency. Where a statute does not require exhaustion of administrative remedies, the common law doctrine of exhaustion of remedies still applies. *See Natural Resources Defense Council v. United States Environmental Protection Agency,* 824 F.2d 1146, 1150–51 (D.C.Cir.1987). Under this doctrine, a party's objection to agency action may be deemed waived if it did not first raise the objection before the agency. *Railroad Yardmasters of America v. Harris,* 721 F.2d 1332, 1338 (D.C.Cir.1983). The Court must determine, in its discretion, whether the policies served by the exhaustion requirement call for application of the waiver rule under the circumstances of the case. *Id.*

"A principal policy rationale for the waiver rule is that judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise." *Id.* Thus, where the issue presented to the Court is, for example, one of statutory interpretation, courts have not applied the waiver rule. *Id.* Such is not the case here. The litany of

---

7. The Court emphasizes that all of the reasons supporting the decision were set forth in the Administrator's decision and elaborated on in the Fitzgerald affidavit, but merely were not expressed in as clear a fashion as MarAd might have done.

alternative solutions and other arguments that plaintiffs raise for the first time before this Court would have been better considered in the first instance by the Administrator, whose expertise and development of a factual record would have enabled proper judicial review. Accordingly, plaintiffs' other arguments are deemed waived.

### Conclusion

Upon consideration of the foregoing, the federal defendants' motion to dismiss is denied. Defendants' motions for summary judgment are granted, and plaintiffs' motions for summary judgment are denied. The Court concludes that the waiver decision of the Maritime Administrator issued in MarAd Docket No. S–902 on November 15, 1994, was valid and is in accordance with law. An appropriate Order accompanies this Opinion.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the federal defendants' motion to dismiss is denied. It hereby further is

ORDERED, that the federal defendants' motion for summary judgment and defendant APL's motion for summary judgment are granted. It hereby further is

ORDERED, that plaintiffs' motions for summary judgment are denied. It hereby further is

ORDERED, that the waiver decision of the Maritime Administrator issued in MarAd Docket No. S–902 on November 15, 1994, is valid and in accordance with law.

SO ORDERED.