**Leonard TCHOKPONHOVE, Plaintiff,**

v.

**AIR AFRIQUE, Defendant.**

**No. 93 Civ. 975.**

United States District Court,
S.D. New York.

June 4, 1996.

Vincent I. Eke–Nweke, Brooklyn, New York, for Plaintiff.

Bigham Engler Jones & Houston, New York City by John MacCrate III, for Defendant.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

CEDARBAUM, District Judge.

Plaintiff sues for the loss of a suitcase he carried on board defendant's flight to Cotonou, Republic of Benin on July 18, 1992 ("the flight"). A bench trial was held on May 1 and 2, 1996, at which five witnesses testified. Plaintiff's witnesses were El Hadj Diop, another passenger on the flight; Jean–Marie Chapoteau, an Air Afrique customer relations representative; and plaintiff. Defendant's witnesses were Rita Yelouassi, an Air Afrique cabin attendant; Cyrille Agavon, Air Afrique's station manager in Cotonou; and Mr. Chapoteau.

At the close of plaintiff's case, I granted defendant's motion to dismiss plaintiff's claims relating to his return flight to the United States. Defendant also moved to dismiss plaintiff's claims with respect to five suitcases he had checked at John F. Kennedy Airport in New York before boarding the flight. Defendant conceded that plaintiff was entitled to compensation of $840 for the two suitcases that have never been returned, and plaintiff withdrew his claims with respect to those two suitcases on the understanding that defendant would pay that compensation. Plaintiff also withdrew his claim of willful misconduct by defendant with respect to the other three checked bags, which were de-

layed but eventually delivered to plaintiff in Cotonou.

At the close of defendant's case, I dismissed plaintiff's claims with respect to the three delayed suitcases on the ground that plaintiff had presented no evidence of damages with respect to those bags. I reserved decision on plaintiff's claim for the loss of a suitcase he claimed to have carried on board the flight. After considering the evidence and observing the demeanor of the witnesses and considering the plausibility and credibility of their testimony, I make the following findings of fact and conclusions of law with respect to that claim.

### Findings of Fact

It is undisputed that plaintiff traveled to Cotonou on Air Afrique flight number RK 050, which left John F. Kennedy Airport in New York City on July 18, 1992. The plane stopped first in Dakar, Senegal and then in Abidjan, Ivory Coast. The plane continued to Cotonou as flight number RK 022.

Plaintiff testified that he carried a large suitcase on board the plane, and that an Air Afrique crew member took custody of the suitcase. According to plaintiff, the crew member gave him the bottom part of a two-layered "baggage identification tag." (Pl. Ex. F.) The crew member attached the top part of the tag to plaintiff's suitcase. The tag contains the information that plaintiff's destination is Cotonou and that the flight number is RK 022, and that he is traveling via Abidjan on flight number RK 050. The tag does not contain the number of plaintiff's passenger ticket or the number and weight of plaintiff's baggage. The back of the tag reads:

BAGGAGE IDENTIFICATION TAG ONLY

Carrier will not be liable for baggage not claimed immediately upon arrival.

This is not the luggage ticket (baggage check) described in Article 4 of the Warsaw Convention or the Warsaw Convention as amended by the Hague Protocol, 1955. Baggage checked subject to tarriffs [sic], including limitations of liabylity [sic], therein contained.

When the Air Afrique crew member took plaintiff's suitcase from him on the plane, she told him that the suitcase would be returned to him in Cotonou. When plaintiff arrived in Cotonou, however, his suitcase was not returned to him. Plaintiff immediately notified Mr. Hashima, an Air Afrique customer relations representative, that his luggage was missing and completed a "Property Irregularity Report." He gave Mr. Hashima the tag that he had received from the Air Afrique crew member who took the suitcase. Mr. Hashima retained the tag. Plaintiff also notified Mr. Hashima that the five suitcases he had checked at Kennedy Airport in New York had not arrived, and he gave Mr. Hashima the baggage checks he had received for those five bags, (Pl. Ex. B). Each baggage check contains the words "Air France" at the top. Air France is Air Afrique's baggage handling agent.

Plaintiff was in the import/export business at the time of the flight and was carrying electronic equipment which he planned to sell in Benin. This was plaintiff's first trip on Air Afrique, although he had previously made approximately one or two trips to Africa during which he sold goods he brought from the United States, and had also made a small number of similar trips to Europe.

Defendant denies that plaintiff carried a suitcase on board the plane and that he received the tag from anyone on board the flight. I accept plaintiff's account. Although Mr. Chapoteau testified that this type of tag is never used in Air Afrique flights from New York to Africa, he admitted that such checks are used for checked baggage on flights from Africa to New York. I did not find credible the testimony of Mme. Yelouassi, who denied that such tags were on board during any flight. Indeed, Air Afrique's response to interrogatories directed to its employee Clotilde Nkenzo, a cabin attendant on the flight, contradicted several of Mme. Yelouassi's answers about the flight.

Defendant contends that plaintiff received the tag on an occasion other than this flight, and that he wrote the particulars specific to this flight on the tag. Defendant notes that lighter writing is visible on the tag underneath the writing describing plaintiff's travel

information. Both the lighter writing and the more prominent writing appear to have been placed on the tag through carbon paper. The lighter writing appears to reflect information recorded on a different tag; writing from the other tag would have been faintly imprinted on this tag when the earlier tag was completed if the tags were stacked one on top of the other in a pad. Furthermore, it is undisputed that plaintiff gave the tag to Mr. Hashima when he arrived in Cotonou, that Mr. Hashima retained the tag, and that plaintiff next saw it when defendant produced the tag in discovery in this action. It is not plausible that plaintiff doctored an Air Afrique tag and brought it with him from New York City to Cotonou so that he could fabricate a claim of a missing suitcase. Plaintiff was a credible witness. I accept plaintiff's testimony with respect to this issue, and find that he carried a large suitcase on board the flight and that an Air Afrique crew member took the suitcase from him and gave him the baggage identification tag.

The suitcase that plaintiff carried on board the flight has never been returned to him. Plaintiff advised Mr. Hashima that the suitcase he had carried on the plane contained the following: four Nikon F4 cameras, five Sony camcorders, nine long-range cordless telephones, two lap top computers, and ten digital memory organizers. I found plaintiff to be a credible witness with respect to the cost of the items that he reported were in the suitcase. Plaintiff testified that the cameras cost $1500 each, the camcorders cost $740 each, the telephones cost $360 each, the computers cost $1510 each, and the ten digital memory organizers cost a total of $2080.

### Conclusions of Law

The parties agree that plaintiff's claim is governed by the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("the Warsaw Convention"), Oct. 12, 1929, 49 Stat. 3000, *reprinted in* 49 U.S.C. § 40105 note (1994). The Warsaw Convention establishes a presumption of air carrier liability for loss of checked baggage when the loss occurs during the transportation of the baggage by air. Warsaw Convention, art. 18(1). Plaintiff's

suitcase, which was taken from him by an Air Afrique crew member and for which he was given a baggage identification tag, is checked baggage within the meaning of the Warsaw Convention. The loss of the suitcase occurred during the transportation by air.

Defendant has not shown that it took all necessary measures to avoid the loss of the suitcase or that it was impossible for it to take such measures. *See* Warsaw Convention, art. 20. Nor has defendant shown that plaintiff's negligence caused or contributed to the loss of the suitcase. *See* Warsaw Convention, art. 21. Accordingly, defendant is liable to plaintiff for the loss of the suitcase.

■ The Warsaw Convention limits the liability of an air carrier for damages for lost luggage. Warsaw Convention, art. 22(2). Article 4 of the convention, however, provides an exception to the limitation of liability if the airline fails to provide the passenger with a baggage check that complies with three specific requirements set forth in the article. Article 4 provides (in pertinent part):

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and weight of the packages;

(g) The amount of the value declared in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been

delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

The baggage identification tag given to plaintiff recites that it "is not the luggage ticket (baggage check) described in Article 4 of the Warsaw Convention." The tag does not contain plaintiff's passenger ticket number or the weight of plaintiff's suitcase. Because defendant did not comply with the requirements of Article 4, it may not avail itself of the provisions of the convention that limit its liability.

Defendant argues that its liability under the Warsaw Convention is limited under the Second Circuit decision in *Republic National Bank v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987). In *Republic National Bank*, the passenger was a professional courier who had made over 250 flights in his career with Republic National Bank. *Republic Nat'l Bank*, 815 F.2d at 237. The courier had checked a package containing $2 million in currency as well as a second bag containing $4.5 million. The check for the $2 million bag did not contain any of the three items required by Article 4(4) of the convention, but the Second Circuit held that the defendant could nevertheless avail itself of the limitation of liability. Relying on its earlier decision in *Exim Industries, Inc. v. Pan American World Airways, Inc.*, 754 F.2d 106 (2d Cir.1985), the court held that "where, as here, the traveler is more like a commercial shipper than the typical airline passenger," 815 F.2d at 237, the limitation of liability applies where the omissions from the baggage claim check "were technical and insubstantial omissions that did not prejudice the shipper and were of little commercial significance," *id.* at 238 (quoting *Exim* ).

In *Exim*, the court of appeals held that the defendant was protected by the convention's limitation of liability even though it provided air waybills that omitted some of the particu-

lars required by subsections (h) and (i) of Article 8, because the missing particulars "were technical and insubstantial omissions that did not prejudice the shipper and were of little commercial significance." 754 F.2d at 108.[1] In 1993, the Second Circuit limited *Exim* to its facts. *Maritime Ins. Co. v. Emery Air Freight Corp.*, 983 F.2d 437 (2d Cir.1993). The court emphasized in *Maritime* that where the text of a treaty is clear, courts have no power to alter the language "even slightly." *Id.* at 440. The court noted that

> [t]wo recent cases have reiterated the principle first espoused by Justice Story in *In re the Amiable Isabella,* 19 U.S. (6 Wheat.) 1, 71, 5 L.Ed. 191 (1821) that
>
> > "to alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty."

*Id.* (citing *Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 135, 109 S.Ct. 1676, 1684, 104 L.Ed.2d 113 (1989) and *Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705, 707 (2d Cir.1990)). The court held that the provisions involved in *Exim* were ambiguous so the court could apply traditional methods of interpretation to resolve the ambiguities. The court concluded, however, that "[e]xcept for those two subsections, the language of Articles 8 and 9 is clear" and therefore "*Exim* must be limited to its facts." *Id.* The court went on to hold that because the plaintiff had received an air waybill that omitted particulars required by subsections (a), (c), and (e) of Article 8, which were not ambiguous, the defendant's liability was not limited by the convention. *Id.* at 441.

■ Although the *Maritime* opinion does not mention *Republic National Bank* by name, its reasoning raises considerable doubt as to whether that decision, which relied on *Exim,* remains good law. The provisions of Article 4 requiring that the baggage check

---

1. Article 9 of the convention provides:

   If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability.

contain "the number of the passenger ticket" and "the number and weight of the packages" are not ambiguous. Moreover, Mr. Tchokponhove was not "more like a commercial shipper than the typical airline passenger." The fact that he had made previous trips to Africa and Europe during which he sold goods he brought with him does not support the conclusion that he should be treated as a commercial shipper. Accordingly, *Republic National Bank* does not apply to this case. *See Siben v. American Airlines, Inc.*, 913 F.Supp. 271, 277 (S.D.N.Y.1996); *Vekris v. Peoples Express Airlines, Inc.*, 707 F.Supp. 675, 677 (S.D.N.Y.1988); *see also Da Rosa v. Tap Air Portugal*, 796 F.Supp. 1508, 1510 (S.D.Fla.1992).

It should also be noted that the number of the passenger ticket as required by subsection (d) is not a technical or insubstantial omission from a baggage receipt. The number of the passenger ticket identifies the passenger to whom the baggage belongs and is the principal means of returning baggage to the passenger from whom it was received. The omission from the baggage receipt of the number of the passenger ticket clearly prejudices the passenger whose luggage goes astray.

■ Plaintiff's damages are the cost of replacing the items contained in the lost suitcase. *Dubiner's Bootery, Inc. v. General Outdoor Advertising Co.*, 10 A.D.2d 923, 200 N.Y.S.2d 757 (1st Dep't 1960). Based on plaintiff's testimony as to the cost of the electronics equipment in the suitcase, plaintiff's damages are $18,040. Although plaintiff seeks an award for lost profits, he presented no evidence showing that he would suffer any loss of profits if he replaced the lost items and sold them on a later trip to Cotonou. Nor did plaintiff present any evidence demonstrating the amount of the profits he expected to earn. Therefore, plaintiff cannot recover any lost profits.

## Conclusion

Accordingly, the Clerk is directed to enter judgment for plaintiff and against defendant in the amount of $18,040 plus the costs of the action. The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

SO ORDERED.